Fred L. DAVIS, Jr., Plaintiff,

v.

**TARGET STORES DIVISION OF DAYTON HUDSON CORP., Defendant.**

No. Civ. PJM 99–776.

United States District Court,
D. Maryland.

March 16, 2000.

Rebecca Newman Strandberg, Bethesda, MD, for plaintiff.

Robert L. Duston, Schmeltzer, aptaker & Shepard, PC, Washington, DC, for defendant.

## *OPINION*

MESSITTE, District Judge.

### I.

Defendant Target Stores Division of Dayton Hudson Corporation ("Target") has moved for an award of partial attorney's fees and costs against Plaintiff Fred L. Davis, Jr. on the grounds that Davis continued to prosecute his claim of employment discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, after it became clear through discovery that the claim was frivolous.[1] Davis opposes the award, arguing that Target's Motion seeks to circumvent the safe harbor procedures of Rule 11 of the Federal Rules of Civil Procedure, which require a party moving for sanctions under the Rule to give the other party notice and an opportunity to remedy the offending pleading before seeking sanctions. Target replies that the Court has inherent power to sanction a party wholly apart from its power under Rule 11 when it finds that a claim has been pursued without reasonable basis in law or fact.

No hearing is necessary to dispose of this Motion. *See* Local R. 105.6 (D.Md. 1999). Upon consideration of the pleadings, the Court will GRANT the Motion for Partial Attorney's Fees and Costs in part; DENY it in part; and MOOT it in part.

### II.

Davis, a forty-five (45) year-old man, was a store team leader at the Target Store located in Germantown, Maryland. As part of his employment duties, he coordinated supplies and services of local distributors who maintained contracts with the store. On April 29, 1997, Davis was involved in an altercation with Roy Crim, an agent of the Pepperidge Farms Distributing franchise. In consequence, Davis was charged with second-degree criminal assault in the District Court for Montgomery County.[2]

Davis contends that in preparation for the assault case, Target's general counsel, Eugene Link, directed him to seek assistance from another Target employee, Chip Wetsel.[3] Davis construed Link's direction as indicating to Davis that he should procure testimony from Wetsel regarding the Crim incident despite the fact that Davis knew Wetsel had not been in the store at the time of the altercation. Davis thus

---

1. The Court granted Target's Motion for Summary Judgment, holding as a matter of law that Davis had adduced insufficient evidence that he was impermissibly terminated by Target based on his age.

2. At the criminal trial, the Assistant State's Attorney entered a *nolle prosequi*, withdrawing the criminal charge against Davis. Davis has since filed a civil suit against Crim in Montgomery County Circuit Court, alleging that Crim fabricated the assault charge.

*Davis v. Crim,* Mont.Co.Cir.Ct. Civil No. 186000–V.

3. Target provided Davis an attorney, Steven Fedder, Esquire, to represent him in the assault case. Issues arising from Fedder's representation and possible ethical violations resulting from communications between Fedder and Link are currently being litigated in a second state court case filed by Davis. *See Davis v. Fedder,* Mont.Co.Cir.Ct. Civil No. 205859.

approached Wetsel, who initially agreed to testify falsely that he had been next door when Davis and Crim had the alleged altercation but that he had neither seen nor heard anything. Before actually testifying, however, Wetsel notified his supervisor, Doug Ramey, that Davis had requested that he perjure himself in the assault case. Ramey reported this information to Donna Gwin, Target's Regional Personnel Manager, with the result that both Davis and Wetsel were subsequently discharged for "detrimental behavior."

In the present suit, Davis charged that Target's upper management, conspiring with Fedder and Link, used the Wetsel testimony incident as a pretext for terminating him when in actuality Target was terminating him because of his age. Davis argued that Brian Fiala, one of his supervisors, had told him that Target was "paying him too much," which Davis took to mean that Fiala had a problem with Davis's age and salary. Apart from this statement, Davis failed to produce any evidence that Fiala or any Target manager involved in the decision to dismiss him had any age animus against him. In addition, Davis failed to establish that Target had systematically terminated its managers when they reached the age of 40. As a result, the Court granted Target's Motion for Summary Judgment.

Target seeks partial attorney's fees and costs either from July 14, 1999 (the date after the depositions of two key witnesses) or from October 1, 1999 (the closing date of discovery) through February 1, 2000, the date Target's Reply to this instant Motion was filed.

## IV.

The so-called American Rule provides that each party must bear his own attorney's fees and costs, absent explicit Congressional authorization to the contrary. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Nevertheless, in certain circumstances, a prevailing defendant is entitled to recover reasonable attorney's fees and costs when a plaintiff continues to pursue unsupported claims. The legal bases for such awards are various, including the so-called "bad faith" exception to the American Rule, specific statutory provisions, and Rule 11 of the Federal Rules of Civil Procedure.

■ Pursuant to its inherent powers, a court may impose sanctions against a plaintiff who has pursued a claim that is deemed to have been vexatious, wanton, or made in bad faith. *See Chambers v. NAS-CO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Colbert v. Yadkin Valley Telephone Membership Corp.,* 960 F.Supp. 84, 86 (M.D.N.C.1997). While some courts have found that bad faith must be found before attorney's fees may be awarded in a "vexatious" case, other courts have held that bad faith is not required. *Compare Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1437 (11th Cir.1998) (bad faith is prerequisite) *with Gilyard v. South Carolina Dept. of Youth Serv.,* 667 F.Supp. 266, 278 n. 5 (D.S.C. 1985) (bad faith not required). In any case, the continuation of litigation of claims which have become frivolous has been held to amount to "bad faith" justifying a fee award. *See Colbert,* 960 F.Supp. at 86.

■ Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.,* as amended, many terms of which have been applied to ADEA cases, a prevailing defendant may also be awarded attorney's fees when a plaintiff's claims are shown to have been frivolous or without merit. *Hoover v. Armco, Inc.,* 691 F.Supp. 184, 187 (W.D.Mo.1988), *aff'd* 915 F.2d 355 (8th Cir. 1990). *See also Christiansburg Garment v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993). A claim is "frivolous" if a plaintiff presents no evidence to support his claim or if he has gone forward on the basis of no colorable legal theory. *See Gilyard,* 667 F.Supp. at 277. Under the *Christiansburg* standard, bad faith on the part of the

plaintiff is not a condition of an award of fees. *See id.* at 278 n. 5.

An additional statutory basis for awarding attorney's fees is found in 28 U.S.C. § 1927, which provides that a court may sanction any attorney or other person admitted to conduct cases in federal court who multiplies the proceedings unreasonably and vexatiously. *Chaudhry v. Gallerizzo,* 174 F.3d 394, 410 (4th Cir.1999).

Rule 11 of the Federal Rules of Civil Procedure, another possible source of attorney's fees, refers primarily to pleadings, allowing sanctions for those submitted for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Fed. R.Civ.P. 11(b). The existence of the Rule has been held not to preclude a court from acting under its inherent or statutory powers and vice versa. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Marley v. Wright,* 137 F.R.D. 359 (W.D.Okla.1991); *Schutts v. Bently Nevada Corp.,* 966 F.Supp. 1549 (D.Nev.1997).

While the ADEA does not specifically provide for the award of attorney's fees to a prevailing defendant, courts have found various justifications for making fee awards in such cases. *See, e.g., EEOC v. Clay Printing Co.,* 13 F.3d 813 (4th Cir. 1994) (U.S. Government could be assessed attorney's fees under Equal Access to Justice Act for frivolous ADEA claim); *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428 (11th Cir.1998) (plaintiff who exhibited bad faith in pursuing ADEA case could be assessed fees); *Colbert,* 960 F.Supp. 84 (M.D.N.C.1997) (both bad faith exception to American Rule and *Christiansburg* standard warranted fee award to prevailing employer in ADEA case). While the Fourth Circuit has yet to decide if and when the ADEA itself permits such an award, this Court need not pass on the matter. Since both the bad faith exception

to the American Rule and the *Christiansburg* standard permit an award against a plaintiff when the continued litigation of his claim has become frivolous, the Court may proceed on the basis of those authorities. *Hoover v. Armco, Inc.,* 915 F.2d 355, 357 (8th Cir.1990).[4]

■ Davis pursued his age discrimination case well after discovery proved that his claim that Target managers had conspired with Link and Fedder to dismiss him on that basis was frivolous. Gwin testified at her deposition that Link and Fedder played no role whatsoever in the decisionmaking process leading to Davis's termination, that the decision to terminate was based on Davis's misconduct in soliciting Wetsel's untrue testimony, not Davis's age. Link's deposition confirmed that he had no role in Davis's termination. Significantly Fiala, the person who allegedly made the comment which suggested to Davis that his age was an issue, was never deposed. Finally, the very suggestion that Fiala's comment that Davis was being paid too much showed age animus is unreasonable on its face. At a minimum, when discovery closed, it should have been clear to Davis that his ADEA claim was no longer viable. At that point, his claim morphed from an arguably appropriate one into vexatious prosecution. This amounted to bad faith. The Court agrees that Target is entitled to the award of at least some attorney's fees.

■ The amount of the fee award lies within the discretion of the Court. While the starting point for determining an appropriate award is ordinarily the hours reasonably expended by the prevailing party's counsel multiplied by a lodestar rate, the Court may adjust this figure upward or downward to accommodate Plaintiff's financial condition, his motive in bringing the lawsuit, and the frivolousness of the case. *See Gilyard,* 667 F.Supp. at

---

**4.** The Court finds 28 U.S.C. § 1927 and Fed. R.Civ.P. 11 inapplicable to the present case. Target's argument is not that *particular pleadings* were unreasonably multiplied, vexatious,

or without factual grounding. Rather, its position is that Davis's entire claim was without foundation.

278. The Court must also be cautious not to assess fees which may serve to discourage other plaintiffs with deserving claims from coming forward while seeking to deter frivolous claims. *See Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993).

Target seeks attorney's fees and costs for the period between either July 14, 1999 (the date of Link deposition) or October 1, 1999 (the close of discovery) and February 1, 2000 (the date on which the Reply for this Motion was filed). The sums are substantial: Target calculates $47,593 in fees and disbursements for the period July 14, 1999 to October 1, 1999 plus $48,634 from October 2, 1999 to November 30, 1999.[5] Davis, a former store manager, appears to be of modest circumstances. Arguably his age discrimination case was not frivolous from the start, but only became so after the close of discovery on October 1.[6] All things considered, the Court believes that an award of $ 5,000 in attorney's fees is sufficient to satisfy the policy considerations presented by this case.

For these reasons, the Court GRANTS Target's Motion for Attorney's Fees in the amount of Five Thousand Dollars ($ 5,000.00) and DENIES it as to any amount in excess of that.

Target's Motion for Costs is MOOT, since it was addressed separately by the Clerk of the Court by Order dated February 23, 2000.

A separate Order implementing this Opinion will be entered.

### *ORDER*

ORDERED:

(1) Defendant's Motion for Attorney's Fees and Costs is GRANTED in part, DENIED in part, and MOOTED in part;

(2) Plaintiff shall pay Target as the prevailing party the sum of Five Thousand Dollars ($ 5,000.00) in attorney's fees;

(3) Defendant's request for fees in excess of Five Thousand Dollars ($ 5,000.00) is DENIED;

(4) Defendant's Motion for Costs is MOOT, since it has been addressed separately by the Clerk of the Court in her Order dated February 23, 2000;

(5) This case shall REMAIN closed.

---

**5.** Although it sought fees either from July 14, 1999 or from October 1, 1999 to February 1, 2000, Target has supplied no information concerning its attorney's fees from November 30, 1999 through February 1, 2000. Such information is unnecessary, however, in light of the Court's holding.

**6.** Certainly Davis had cause to be suspicious of Target. Aspects of Target's actions—especially the apparent conflict of interest on Attorney Fedder's part—might have led Davis to believe that a plot had been hatched to get rid of him. The point is, however, that it became clear fairly early on that no age discrimination was involved.